UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| LISA B. ADKINS,  )<br>  )<br>            Plaintiff,  )<br>  vs.  )     1:09-cv-0482-SEB-TAB<br>  )<br>  )<br>MICHAEL J. ASTRUE, Commissioner  )<br> of the Social Security Administration,  )<br>  )<br>            Defendant.  )  | |

**Entry Discussing Complaint for Judicial Review**

Lisa B. Adkins ("Adkins") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

## I. Background

Adkins filed applications for SSI and DIB on November 24, 2004, alleging an onset date of disability of May 24, 2004. Her applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted and a hearing was conducted on May 7, 2008. Adkins appeared, accompanied by her attorney. Medical and other records were introduced into evidence. Adkins, two medical experts, and a vocational expert testified at the hearing. The ALJ issued a decision denying benefits on May 28, 2008. On April 2, 2009, the Appeals Council denied Adkins' request for review, making the ALJ's decision final. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Adkins met the insured status requirements of the Act through September 30, 2008; (2) Adkins had not engaged in substantial gainful activity since May 24, 2004, the alleged onset date; (3) Adkins had severe impairments consisting of osteoarthritis, obesity, hypertension, an abdominal hernia, an affective disorder, a posttraumatic stress disorder and a personality disorder; (4) Adkins did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) Adkins had the residual functional capacity ("RFC") to lift and carry ten pounds occasionally and five pounds frequently; she could stand and walk two hours of an eight hour workday, but not consecutively; she must have a sit/stand option; she could sit six hours and perform the other requirements of sedentary work; she could not perform work that required more than occasional contact with the public; she could perform work involving simple and repetitive as well as detailed tasks; and she could not perform work involving complex tasks; and (6) Adkins was capable of performing past relevant work as a dispatch clerk, as this work would not require the performance of work-related activities precluded by her RFC. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Adkins had not been under a "disability" as defined in the Act from May 24, 2004, through the date of the ALJ's decision.

## II. Discussion

### A. Applicable Law

To be eligible for DIB and SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

2

*Id.* The claimant bears the burden of proof at steps one through four, and at step five the burden shifts to the Commissioner. *Id.* at 352.

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993).  "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.     Analysis

In this case, the ALJ determined that Adkins had severe impairments consisting of osteoarthritis, obesity, hypertension, an abdominal hernia, an affective disorder, a posttraumatic stress disorder and a personality disorder, but that she could perform her past relevant work as a dispatch clerk.

Adkins' sole argument is that the ALJ erred when he refused to allow counsel to ask the medical expert for his opinion as to how long Adkins could sit at one time. At the hearing, Adkins testified that when sitting, she needed to stand up about every 15 or 20 minutes. (R. at 833, 841).

A medical expert, Dr. Stump, testified that Adkins could do sedentary work provided she had a sit/stand option. (R. at 854-55). The ALJ did not permit counsel on cross-examination to ask Dr. Stump his opinion as to how long Adkins could sit at one time. (R. at 855-56). The ALJ did not allow the question because the ALJ believed the question went to Adkins' credibility which Dr. Stump could not judge, and because the ALJ did not believe the question was relevant. (R. at 855-56).

In determining Adkins' RFC, the ALJ gave "great weight" to Dr. Stump's opinion because Dr. Stump had the opportunity to review all of the evidence of record. (R. at 23). Adkins argues that because the ALJ accepted Dr. Stump's opinion as to what Adkins could and could not do, and because the vocational expert's testimony was undisputed, the issue of how long Adkins could sit at one time determined the outcome of her case. She contends that the question to the medical expert was relevant and proper.

Adkins asserts that the vocational expert testified that a person of Adkins' age, education and work experience who could not sit longer than 20 minutes at one time could not do any kind of job. (R. at 861). The actual testimony of the vocational expert was that, if Adkins' testimony as to her limitations were taken as true, there were "a multitude of reasons" why she could not perform any kind of job. (R. at 861). The "major" reasons listed by the vocational expert were Adkins' testimony that she could sit no more than 20 minutes, stand no more than five minutes, and that she lies down 13 or 14 times a day for 30 to 60 minutes. *Id.*

Regulations that govern a party's right to present evidence at a hearing state that "[t]he administrative law judge may ask the witnesses any questions material to the issues and shall allow the parties or their designated representatives to do so." 20 C.F.R. §§ 404.950(e); 416.1450(e). Adkins' counsel had a right to cross-examine Dr. Stump. Dr. Stump testified that Adkins would require a "sit/stand" option and Adkins' attempt to ask questions concerning that specific opinion was not improper.  The question was "material to the issues" as the topic was within the scope of the expert's testimony and his expertise. The ALJ's refusal to allow the question was not reasonable. The Commissioner argues, in the alternative, however, that any such error was harmless, and with this the court agrees.

During the hearing, counsel asked Dr. Stump whether he agreed with Adkins' testimony that she could only sit for 15 minutes at a time. (R. at 855). Dr. Stump stated that he "just testified what's in the record. . . just telling the Judge what's in the chart," and that in the record "[n]obody said in there she had to get up and down that much." *Id.*

The only evidence that Adkins could not sit for more than 15 or 20 minutes at a time came in through her own testimony. (R. at 833, 841). Treating physician Dr. Boersma opined that Adkins had a "moderate" as opposed to "significant" limitation in sitting. (R. at 383).  Consulting physician Dr. Yassin-Kassab examined Adkins twice and although he reported restrictions on her ability to walk and stand, he did not restrict her ability to sit. (R. at 187, 327). Medical expert Dr. Stump opined that Adkins could perform sedentary work, but "may not be able to stand a full two hours." (R. at 854). He stated that it would "be a situation where she would be up and down and maybe during the course of a day she would stand a half hour to two hours if she has some discomfort sitting." (R. at 854). He testified that in other words, she would need "a sit/stand option." (R. at 854-55).

The ALJ considered Adkins' testimony that she could sit for about twenty minutes at a time and could stand for about five minutes. (R. at 21). The ALJ considered the various relevant factors in weighing Adkins' credibility, including the objective medical evidence, medical opinions of record, her daily activities, the effectiveness and side effects of medications, and other measures she used to relieve pain. (R. at 21-23). *See*  Social Security Ruling 96-7p; 20 C.F.R. §§ 404.1529, 416.929. The ALJ concluded that Adkins' allegations concerning the impact of her impairments on her ability to work were "not fully credible." (R. at 22, 24). A reviewing court affords a credibility finding "'considerable deference,' and [will] overturn it only if 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004)). The court "will uphold an ALJ's credibility determination if the ALJ gave specific reasons for the finding that are supported by substantial evidence." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). "Reviewing courts therefore should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). The court does not find the ALJ's credibility determination to be "patently wrong."

4

Accordingly, although the ALJ erred in refusing to allow counsel to ask the medical expert additional questions concerning how long Adkins could sit at one time, the medical expert did make it clear that his testimony was based on what was contained in the record. He stated that there was no evidence of record that Adkins would have to stand up after sitting only 15 minutes. As discussed herein, no treating or consulting physician opined that Adkins' ability to sit was limited to 15 or 20 minutes. Under these circumstances, it would serve no purpose to remand the action for further proceedings. *See Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir.1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

As noted, the court's role in this case is not to attempt a *de novo* determination of Adkins' eligibility for disability benefits, but to decide if the Commissioner's decision was supported by substantial evidence. The court is "not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

"An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." *Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007). In this case, the ALJ sufficiently articulated his assessment of the evidence to enable the court to "trace the path of [his] reasoning." *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (internal quotation omitted). Accordingly, because substantial evidence supports the ALJ's evaluation of Adkins' impairments and functional limitations, the ALJ's decision must be affirmed.

### III.  Conclusion

There was no reversible error in the assessment of Adkins' applications for DIB and SSI. The final decision of the Commissioner is supported by substantial evidence and is not tainted by reversible error. Under these circumstances, Adkins is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 06/18/2010

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana